THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VERNA MARTINE, Defendant-Appellant.

First District (3rd Division) Nos. 79—1406, 80—1853 cons.

Opinion filed February 15, 1984.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, and Gail E. Meyers, of Evanston, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and Lester M. Joseph, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a bench trial, the defendant, Verna Martine, was convicted of possession with intent to deliver more than 30 grams of cocaine, possession of more than 30 grams of cocaine, possession of cannabis, possession of methaqualone, possession of benzphetamine, and possession of lysergic acid diethylamide. She was sentenced to six years' imprisonment for possession of cocaine with intent to deliver, four years for possession of cocaine, two years for possession of methaqualone, benzphetamine, and lysergic acid diethylamide, and one year for possession of cannabis, all to be served concurrently.

On appeal the defendant contends (1) that she was not proved guilty of possession of the controlled substances beyond a reasonable doubt; (2) that the search warrant was unreasonably executed; (3) that the State failed to establish a sufficient chain of possession of the controlled substances; (4) that she was improperly convicted of both possession of cocaine and possession of cocaine with intent to deliver; (5) that she was denied her right to be present during all aspects of her trial; (6) that the legislature improperly classified cocaine as a narcotic; (7) that the legislature unlawfully delegated to the Dangerous Drug Commission the authority to add, delete or reschedule controlled substances; and (8) that the law upon which her indictment was based was void.

Officer Steven Kuhn of the Chicago Police Department testified that on December 13, 1977, following a conversation with an inform-

ant, he obtained a search warrant for the defendant and the single-family dwelling located at 1427 West Henderson in Chicago. Officer Kuhn and four other police officers went to that address at approximately 8:30 p.m.

When they arrived at the house, Officer Kuhn and Officer Thomas Riley knocked on the front door. When defendant asked what the men wanted, they identified themselves as police officers. The defendant went to the window, and Officer Kuhn showed her his star and his identification and announced that he was a police officer and that he had a search warrant. When the defendant retreated to the back of the house, the two officers forced entry into the house and stopped the defendant in the dining room. No one else was present in the house.

Officer Kuhn searched the bedroom and recovered a purse containing $600 in cash. In a dresser drawer among lady's laundry, he found more cash and three clear plastic bags of powder. Officer Kuhn conducted a field test on the powder which indicated that it was cocaine. Underneath a suitcase on the floor of the closet, Officer Kuhn discovered four clear plastic bags containing crushed green plant material and one bag containing miscellaneous pills.

After the search was completed, three friends of the defendant arrived at the house. The officers searched these persons but found no contraband. Officer Kuhn took the contraband which he found in the apartment to the police station where he marked it for identification. The clear plastic bags were never out of his sight. He placed the bags in a mail envelope and took the evidence to the crime lab where it was inventoried and placed in a sealed bag.

Christine Provo, a police chemist, testified that she analyzed the various substances contained in the plastic bags and determined them to be cocaine, marijuana, benzphetamine, and methaqualone. Certain pink pieces of paper which were found in the bag of pills and tested by criminalistic aide Ann McCann contained lysergic acid diethylamide (LSD).

Charles Zeller, a real estate broker, testified that he was the contract seller of the property located at 1427 West Henderson. The defendant was the contract purchaser.

The defendant testified that she had no knowledge of any controlled substances on the premises of 1427 West Henderson. On the evening of December 13, 1977, she was in her home with two friends, Dale Powers and Joseph Radziejewski. At approximately 8 p.m., the doorbell rang. Radziejewski answered the door. Thereafter, the defendant observed several men with guns drawn. The men stated

that they were police officers.

The defendant testified that 10 to 12 police officers searched the house. She stated that she saw several officers come out of her bedroom with small plastic bags containing white powder. One officer took a bag of sugar from her pantry and marked it "1 lb. coke." The officers then winked at each other. The defendant further testified that the police took her prescription pill bottles and emptied the contents into one plastic bag.

Joseph Radziejewski corroborated the testimony of the defendant. On December 13, 1977, he arrived at the defendant's home around 6:30 p.m. He stated that when he answered the door, someone said he was from the gas company. Radziejewski replied, "hold on a second" and went to ask the defendant if she was expecting anyone. Thereafter, he heard a loud bang and saw the front door being knocked down.

Michael Wisniewski testified that he had watched the defendant's house on several occasions when she was out of town. During these periods he had a key to the house, would sleep in defendant's bedroom and would use her closet. Early in December 1977, Wisniewski stayed at the house and entertained several friends there.

Kenneth LeVey testified that he often had been in defendant's home when she was not present. LeVey visited the defendant almost every day because she was ill and terrified of being alone in her house. LeVey was at defendant's home from 6 to 8 p.m. on the date of the arrest. He stated that two men and a woman were also present.

Several character witnesses also testified on defendant's behalf. Over the State's objections, they testified that they had never known or heard that the defendant was involved in the sale or use of narcotics.

In rebuttal, Officer Thomas Riley and Sergeant Steven Schwieger corroborated the testimony of Officer Kuhn.

## I

The defendant first contends that she was not proved guilty of possession of the controlled substances beyond a reasonable doubt. The defendant points out that the substances were discovered in her home, not on her person. She argues that numerous persons had access to her home and contends that the State produced no corroborating evidence linking her to the contraband.

■■ To support a conviction for unlawful possession of a controlled substance, the State must establish that the defendant had knowledge of the presence of the controlled substance and that it was

in his immediate and exclusive control. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370; *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.) Proof of actual physical possession is not necessary; constructive possession, which requires a showing that the defendant controlled the premises upon which the substance was found, is sufficient. (*People v. Galloway; People v. Calhoun* (1977), 46 Ill. App. 3d 691, 361 N.E.2d 55.) If it is proved that the defendant controlled the premises, an inference of both knowledge and possession arises which may sustain a guilty verdict. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939; *People v. Luetkemeyer* (1979), 74 Ill. App. 3d 708, 393 N.E.2d 117, *cert. denied* (1980), 446 U.S. 938, 64 L. Ed. 2d 791, 100 S. Ct. 2157.) Mere access by other persons is insufficient to defeat a charge of constructive possession. *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.

■ In the instant case it is undisputed that the defendant lived alone at 1427 West Henderson. Officer Kuhn testified that the defendant was alone in the house at the time he searched the premises. The controlled substances were discovered in defendant's dresser drawer among personal items and underneath a suitcase on the floor of her closet. We believe that these facts and circumstances support an inference that the defendant had possession of the substances. As our supreme court noted in *People v. Nettles*, "[h]uman experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters." (23 Ill. 2d 306, 308.) Although others had access to defendant's home and often stayed there in her absence, such access is insufficient to defeat the finding of constructive possession.

■ Whether there is possession and knowledge are both questions of fact. These factual determinations will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Galloway*.) We believe that the evidence in the instant case was more than sufficient to support the trial court's finding.

## II

The defendant's second argument is that because the police officers executed the search warrant in an unreasonable manner, the evidence seized as a result of said warrant should have been suppressed.

■ Generally, absent exigent circumstances, when police officers are executing a search warrant, they are expected to announce their authority and purpose prior to entering the premises to be searched.

(*People v. Boykin* (1978), 65 Ill. App. 3d 738, 382 N.E.2d 1369.) The defendant contends that the execution in the instant case was unreasonable because the officers falsely identified themselves as employees of the gas company prior to the forced entry. However, conflicting evidence was presented concerning the circumstances of the entry. After assessing the credibility of the witnesses, the trial court accepted the testimony of the State's witnesses. We will not substitute our judgment for that of the trial court on the issue of credibility.

■ Officer Kuhn testified that after the defendant came to the door, he identified himself as a police officer, showed her his identification, and announced that he had a search warrant. When he observed the defendant retreating to the rear of the house, he and Officer Riley forced entry. We believe the officers were justified in suspecting that the defendant was attempting to destroy the drugs. Courts have often commented on the ease with which narcotics can be concealed or destroyed. (See *People v. Mathes* (1979), 69 Ill. App. 3d 275, 387 N.E.2d 39, and cases cited therein.) Under these circumstances, we cannot say that the trial court's denial of the motion to suppress was manifestly erroneous. See *People v. Maddox* (1981), 94 Ill. App. 3d 1052, 419 N.E.2d 441.

## III

■ The defendant's third argument is that the State failed to establish a sufficient chain of possession of the controlled substances. A chain of custody foundation is required when the offered evidence is not readily identifiable or is susceptible to alteration by tampering or contamination. (*People v. Winters* (1981), 97 Ill. App. 3d 288, 422 N.E.2d 972, *cert. denied* (1982), 455 U.S. 923, 71 L. Ed. 2d 464, 102 S. Ct. 1282.) In the absence of any tangible suggestion of tampering, alteration or substitution, it is sufficient to prove a reasonable probability that the articles have not been changed in any important respect. (*People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553.) Mere speculation of alteration is insufficient to undermine the foundation laid. *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 392 N.E.2d 923.

In the instant case Officer Kuhn testified that he took the contraband discovered in defendant's house to the police station where he marked it for identification and placed it in a mail envelope. During this time, the clear plastic bags were never out of his sight. Officer Kuhn then took the evidence to the crime lab where it was inventoried and placed in a sealed bag.

■ The defendant speculates that because the evidence was not

sealed until it was inventoried at the crime lab, tampering could have occurred. We disagree. Officer Kuhn's testimony that the evidence was never out of his sight from the time he left defendant's house until it was inventoried at the crime lab established a foundation for the admission of the evidence. Defendant's speculation of alteration is insufficient to undermine this foundation. *People v. Rhoades.*

## IV

The defendant's fourth argument is that she was improperly convicted of both possession of cocaine and possession of cocaine with intent to deliver. The State concedes that the possession of cocaine is an included offense of possession of cocaine with intent to deliver. (See *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938.) Thus, defendant's conviction and sentence for the possession of cocaine are hereby vacated.

## V

The defendant's fifth argument is that her right to be present at trial was denied when the court requested that she leave the courtroom while defense counsel made an offer of proof during his redirect examination of the defendant. During redirect examination defense counsel asked defendant how many times Officer Riley came to her house subsequent to her arrest. Defendant stated that Officer Riley had come to her house on three occasions. When counsel asked defendant what was discussed on the first occasions, the State objected on the grounds that the matter was irrelevant and beyond the scope of cross-examination. An assistant State's Attorney suggested that the witness be removed and that an offer of proof be made. The trial court agreed and asked the defendant to step into the jury room. Defense counsel stated that the defendant would testify that Officer Riley admitted that she had been framed. The trial court held that such testimony was indeed beyond the scope of cross-examination. Thereafter, the defendant returned to the courtroom.

It is a well-established rule that an accused has the right to be personally present at every stage of the proceeding against him from arraignment to final sentencing. (*People v. Lewis* (1979), 73 Ill. App. 3d 361, 386 N.E.2d 910.) However, this right is not absolute. Where defendant's substantial rights are not involved or where his presence would be useless, he need not be present. *People v. Anton* (1981), 100 Ill. App. 3d 344, 426 N.E.2d 1070; *People v. Saltz* (1979), 75 Ill. App. 3d 477, 393 N.E.2d 1292.

In the instant case, no substantial rights of the defendant

were affected by her brief absence from the courtroom during the offer of proof. First, the purpose of the offer of proof was to determine whether the rebuttal testimony was beyond the scope of cross-examination. Such a determination was purely a legal issue, and the defendant's presence would have contributed nothing to her defense. In addition, since the offer of proof concerned defendant's own testimony, she was not prevented from hearing any testimony or confronting her accusers. Because defendant was not prejudiced by her absence from the courtroom, reversal of her conviction is not required. *People v. Harvey* (1981), 95 Ill. App. 3d 992, 420 N.E.2d 645.

## VI

 The defendant's sixth argument is that because cocaine is unconstitutionally classified as a narcotic drug, the trial court should have granted her motion to dismiss the counts of the indictment involving the possession of cocaine. In *People v. McCarty* (1981), 86 Ill. 2d 247, 427 N.E.2d 147, our supreme court held that the legislature's designation of cocaine as a narcotic for the purpose of penalty was a reasonable and constitutional classification. Thus, defendant's motion to dismiss was properly denied.

## VII

The defendant's seventh argument is that the legislature unlawfully delegated to the Dangerous Drug Commission the authority to add, delete or reschedule all controlled substances within the five schedules of the Controlled Substances Act. (Ill. Rev. Stat. 1979, ch. 56½, par. 1201.) The Act sets forth certain criteria that the Commission must consider in making a determination regarding the addition, deletion or rescheduling of a controlled substance.

 Defendant's argument was rejected by our supreme court in *People v. Avery* (1977), 67 Ill. 2d 182, 367 N.E.2d 79. The court noted that although the General Assembly cannot delegate its general legislative power to others, it may authorize others to do things which it might properly do but cannot do as understandingly or as advantageously itself, if the authority thus granted is delimited by intelligible standards. The court concluded that the legislature properly delegated the authority to add, remove or reschedule substances and that it provided intelligible standards to delimit that authority. Thus, this argument of defendant is without merit.

## VIII

The defendant's final argument is that the law upon which her in-

dictment was based was void.

As we previously discussed, the Controlled Substances Act provides that the Dangerous Drug Commission has the authority to add, delete or reschedule the controlled substances within the five schedules. Once the Commission issues a rule in conformance with the requirements of the statute, said rule has the immediate effect of law. (*People v. Avery.*) The Commission must then submit the rule to the General Assembly in the form of a proposed law amending the Act. If the proposed rule is not adopted by the General Assembly and enacted into law within two years after the Commission has issued the rule, the rule expires. Ill. Rev. Stat. 1977, ch. 56½, par. 1201.

On October 9, 1975, the Commission met and adopted and republished the five schedules with certain changes. On September 3, 1977, the legislature amended the Act reflecting these changes. On December 3, 1977, the legislature again amended the Act to correct the spelling of two controlled substances.

 Defendant contends that because a quorum was not present at the October 9, 1975, meeting of the Commission, the adoption of the schedules at that meeting was void. This issue was also raised in *People v. Copeland* (1980), 92 Ill. App. 3d 475, 415 N.E.2d 1173, in which the court held that the validity of the Commission's actions was irrelevant. The court stated that its sole inquiry was the validity of the legislative enactment since the legislature could have enacted the schedules without the participation of the Commission. Thus, we need not determine whether a quorum was present at the Commission meeting.

The defendant also asserts that the legislature did not approve the proposed law until December 3, 1977, more than two years after the Commission had issued its rule. Such an assertion is erroneous. As we previously stated, the legislature amended the Act on September 3, 1977, by Public Act 80—472. Thus, the law upon which defendant's indictment was based was not void.

The defendant has filed a petition for rehearing on the basis of *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, *cert. denied* (1983), 455 U.S. 953, 75 L. Ed. 2d 792, 103 S. Ct. 1433, which holds that when a defendant makes a substantial preliminary showing that a warrant is based on knowingly false information or with reckless disregard for the truth, without which there would be no finding of probable cause, an evidentiary hearing should be held. Defendant urges this court in the instant case to consider the issue decided by *Garcia*, even though it was not raised on appeal.

 The waiver rule is one of administration, not jurisdiction,

and therefore need not be applied in cases of plain error where substantial rights are involved. (*People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070.) Therefore, even though this issue was not raised on appeal, since it involves the defendant's fourth amendment rights we will consider the merits of defendant's claim.

In *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, while searching an apartment pursuant to a search warrant, the Chicago police had seized a quantity of cocaine. The search warrant had been issued on the basis of the affidavit of one of the police officers, which included hearsay statements of an undisclosed informant.

Prior to trial, Garcia moved to suppress the evidence obtained from the search, alleging that the warrant was illegally obtained. He claimed that the officer's affidavit was knowingly and intentionally false, and challenged the integrity of the oath of the police officer as to the entire affidavit. Garcia supported his motion with his own affidavit and requested an evidentiary hearing. He further requested that the police officer who filed the affidavit be called as the first witness and that the anonymous informant be produced. The defendant's motion was denied. The objects seized in the search were introduced into evidence at the trial, and the defendant was convicted.

On appeal, this court reversed, citing *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676, wherein the court stated that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that an evidentiary hearing be held at the defendant's request. Further, a "substantial preliminary showing" does not require a defendant to prove his charge by a preponderance of the evidence in order to obtain a hearing. That is the evidentiary standard for the hearing itself. Thus, Garcia's affidavit challenging, in its entirety, the truth of the affidavit upon which the search warrant was issued was a sufficiently substantial preliminary showing to merit an evidentiary hearing.

In the instant matter, prior to trial the defendant sought a hearing pursuant to *Franks v. Delaware* and filed a motion to controvert the warrant. Her memorandum of law in support of the motion alleged that the affidavit upon which the warrant was based was either perjured or in reckless disregard of the truth. Defendant supported her motion with affidavits, her own as well as those of two neighbors who were at her home when the anonymous informant allegedly pur-

chased two ounces of cocaine. The affidavits denied each assertion in the police officer's affidavit supporting the warrant.

Based on our decision in the *Garcia* case, we believe that this was a sufficient preliminary showing to require an evidentiary hearing on defendant's motion to controvert the search warrant based on the police officer's affidavit. Thus, this matter must be remanded for an evidentiary hearing in conformity with the guidelines established in *People v. Garcia* (1982), 109 Ill. App. 3d 142, 150-52. If the defendant meets her requisite burden of proof by a preponderance of the evidence, the warrant must be voided and the fruits of the illegal search excluded to the same extent as if probable cause were lacking on the face of the affidavit filed with the warrant complaint. *Franks v. Delaware*.

For the foregoing reasons, we vacate the conviction and sentence for the possession of cocaine, and we reverse and remand for proceedings consistent with this opinion.

RIZZI, P.J., and WHITE, J., concur.